Edward ADLER, et al., Plaintiffs,

v.

BERG HARMON ASSOCIATES,
et al., Defendants.

No. 89 Civ. 8114 (WCC).

United States District Court,
S.D. New York.

April 7, 1992.

Beigel & Sandler, Ltd. (Bijan Amini, Alexander T. Moore, of counsel), New York City, for plaintiffs.

Jacobs Persinger & Parker (I. Michael Bayda, of counsel), New York City, for defendants Berg Harmon Associates, Harmon Associates, Harquel Associates II, Robert T. Harmon Corp., Robert T. Harmon, Charles N. Loccisano, Riveria Partners, Inc., Berg Harmon Lexington Properties, Berg Harmon Properties, III, Berg

Harmon Southeast Consulting, Berg Ventures Inc., BH Properties Associates BH Properties, Associates II, BHS Properties, Eastern Realty Consultants, FEC Mortg. Co., First Realty Management, Metro Ventures, Harmon Envicon Associates, Southeast Realty Consultants Co., Southern Realty Consultants and Southern Ventures Inc.

Skadden, Arps, Slate, Meagher & Flom (William P. Frank, Richard S. Simon, Peretz Bronstein, of counsel), New York City, for Primerica Corp., Berg Enterprises, Inc. and Kenneth Berg.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

Plaintiffs Edward Adler, et al. bring this action for damages pursuant to the Racketeering and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*, and, under the Court's pendent jurisdiction, for common law fraud, negligence, and breach of fiduciary duty against Berg Harmon Associates, et al. This matter is presently before the Court on the motion of defendants Kenneth Berg, Berg Enterprises, Inc., and Primerica Corporation (the "Berg defendants"), defendants James F. Moscowitz, David T. Smith, David T. Smith Associates, and Johnstown Management Company (the "Smith and Johnstown defendants")[1], and defendants Berg Harmon Associates, Harmon Associates, Harquel Associates II, Robert T. Harmon Corporation, Robert T. Harmon, Charles N. Loccisano, Riveria Partners, Inc., Berg Harmon Lexington Properties, Berg Harmon Properties, III, Berg Harmon Southeast Consulting, Berg Ventures Inc., BH Properties Associates, BH Properties Associates II, BHS Properties, Eastern Realty Consultants, FEC Mortgage Co., First Realty Management, Metro Ventures, Harmon Envicon Associates, Southeast Realty Consultants Company, Southern Realty Consul-tants, and Southern Ventures Inc. (the "Harmon defendants") to dismiss plaintiffs' Second Amended Complaint pursuant to Rules 9(b) and 12(b)(6), Fed.R.Civ.P.

## BACKGROUND

Plaintiffs filed their original Complaint on December 7, 1989. Thereafter, defendants moved to dismiss the Complaint under Rules 9(b) and 12(b)(6), Fed.R.Civ.P. Subsequently, defendants moved for partial summary judgment on plaintiffs' Section 10(b) claim based upon the one-year/three-year limitations period adopted by the Second Circuit in *Ceres Partners v. GEL Assocs.*, 918 F.2d 349 (2d Cir.1990). In *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, — U.S. —, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), the Supreme Court applied the one-year/three-year limitations period to claims under Section 10(b). As a result of the decision in *James B. Beam Distilling Co. v. Georgia*, — U.S. —, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), decided on the same day as *Lampf*, the one-year/three-year rule became retroactively applicable to all existing cases, including the present one. In light of *Lampf* and *Beam*, plaintiffs amended their Complaint to delete the Section 10(b) claim except to the extent the securities fraud claims served as predicate acts to a RICO action.[2]

For purposes of the pending motion, the Court has assumed the facts alleged in the Second Amended Complaint to be true.[3] Berg Harmon, a joint venture consisting of Harmon Associates and Berg Ventures, Inc., was and is a promoter and syndicator of securities in real estate limited partnerships. Kenneth Berg ("Berg") was the President and a director of Berg Ventures, Inc., as well as President and Chairman of the Board of Berg Enterprises, Inc. Robert T. Harmon ("Harmon") and Charles N. Loccisano ("Loccisano") are the general

---

**1.** The Smith and Johnstown defendants have submitted no papers of their own in support of their motions. They rely exclusively on the papers of the Berg and Harmon defendants.

**2.** Congress has subsequently enacted Section 476 of the FDIC Improvement Act of 1991, Pub. Law 102–242, 105 Stat. 2236 (to be codified at 15 U.S.C. § 78aa-1), which limits the retroactive application of *Lampf*.

**3.** The Second Amended Complaint will hereinafter be referred to simply as the Complaint.

partners of Harmon Associates, as well as the principal shareholders of the Robert T. Harmon Corporation.

Plaintiffs in this action are 71 investors who purchased securities through investments of cash and notes in certain limited partnerships (the "Berg Harmon partnerships") sponsored by defendants in reliance on Private Placement Memoranda (the "PPMs") and other offering materials prepared, issued and distributed by defendants.[4] Cmplt. at ¶ 4. These investments were made between 1980 and 1985. The PPMs disclosed, among other things, such matters as the purchase price of the property, the acquisition price paid by the seller, the profit on the purchase to the sponsor, the terms of the mortgages, the tax and economic risks of the investment, the illiquidity of the investment, the basis and infirmity of the financial projections, and the fees and benefits to the sponsor and its affiliates.

Plaintiffs allege that they made their investments in reasonable reliance on the Private Placement Memoranda and other offering materials issued in connection with the limited partnership offerings, which plaintiffs allege misrepresented or failed to disclose certain material facts. Defendants allegedly created and controlled the Berg Harmon partnerships to purchase real estate at inflated prices through the use of complicated financing and mortgages, excessive fees, and fees for non-existent services. According to plaintiffs, defendants engaged in an elaborate "Ponzi" or pyramid scheme whereby defendants utilized a portion of the fees and profits earned to "prop up" earlier partnerships so that the illusion of successful past performance would allow the promoters to continue in the syndication of new partnerships. Cmplt. at ¶¶ 13, 14. Plaintiffs assert that the "scheme" allowed the organizers and sponsors to abandon the partnerships when further syndications became impossible or impracticable, leaving the partnerships and limited partners without equity or capital to sustain the partnerships' properties. Cmplt. at ¶ 14(e).

The Complaint includes allegations that the Berg Harmon partnerships' Memoranda and other sales materials misrepresented that substantial economic benefits would flow to the limited partners from an investment in the partnership, when in fact defendants knew that such benefits would either not materialize at all or would inure only to defendants' benefit. Cmplt. at ¶¶ 25(a), (b), (e), (g), (i), (j), (k), (q) and 27(e). The Complaint further alleges that (1) the PPMs were misleading in that the financial projections and risk estimates contained therein were without economic or financial support (Cmplt. at ¶ 25(c), (d), (n), (*o*), 27(g), (h), and (u)); (2) defendants misrepresented or failed to disclose the fact that the terms of some of the transactions were economically disadvantageous to the partnership (Cmplt. at ¶ 27(m), (n), (*o*), (p), and (t)); (3) the PPMs failed to disclose or misrepresented various information investors needed to evaluate the present and future values of the properties purchased by the partnership (Cmplt. at ¶¶ 27(i), (j), (k), (*l*), (q), (r), (s), and 25(p)); and (4) the PPMs failed to disclose the payment of certain commissions and fees to accountants and other financial advisors and that absent such compensation these advisors would not have recommended an investment in the partnership (Cmplt. at ¶ 27(a)).

Defendants are also alleged to have omitted to advise that they knew that the Berg Harmon partnerships were a sham; that a sales producer for defendants was an accounting firm whose partners were owners

---

**4.** In the early 1980's an investment in real estate was highly attractive to the investment marketplace and generated considerable interest as providing both a relatively secure investment with reasonable capital appreciation as well as tax benefits. Real estate limited partnerships were popular with investors in high tax brackets. The sponsors of such ventures normally organized limited partnerships which acquired title to real estate properties and sold limited partnerships interests to wealthy investors who wished to "shelter" their incomes from high tax rates by subtracting from these incomes their pro rata shares of partnership losses, which was permitted by the tax laws at that time. The details of such investments, including economic risks, tax risks and benefits to the sponsor and affiliated companies, were set forth in disclosure documents given to investors and known as Private Placement Memoranda.

of an entity affiliated with Harmon Associates; and that defaults on mortgages and foreclosure could only be avoided by the sponsors advancing funds to the partnerships from fees and profits they had received. Cmplt. at ¶ 27(f), (b), and (c). In addition, plaintiffs allege that the sponsors made oral representations to accounting firms that the partnerships would be economically supported as long as necessary in order to induce those firms to recommend investments in the partnerships. Cmplt. at ¶ 25(d).

According to plaintiffs, this is not a case of a high-risk investment going sour due to market forces or unanticipated changes in the tax laws. Rather, it involves a sophisticated, predetermined fraud where defendants knew that investors in the Berg Harmon partnerships had no possibility of realizing a profit from their investments.

## DISCUSSION

### *Failure to Plead Fraud with Particularity*

█ Fed.R.Civ.P. Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."[5] The specificity requirement of Rule 9(b) has been found to serve several purposes: "(1) to provide a defendant with fair notice of the plaintiff's claim, (2) to protect a defendant from harm to his or her reputation or goodwill, and (3) to reduce the number of strike suits." *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989). While Rule 9(b) allows "conditions of mind" to be averred generally, plaintiffs must nonetheless allege facts which give rise to a strong inference that defendants possessed the requisite fraudulent intent. *Cosmas*, 886 F.2d at 12–13.

█ To be sufficient under Rule 9(b), a complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements. *See Goldman v. Belden*, 754 F.2d 1059, 1069–70 (2d Cir.1985). Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud.

█ In the instant action, the allegedly fraudulent representations are attributed to the "sponsors of the partnerships."[6] The allegedly fraudulent omissions are attributed simply to "defendants." For example, paragraph 25 of the Complaint alleges that the "sponsors of the partnerships" made the following material misrepresentations of fact, including:

(a) the investor limited partners would receive substantial economic benefits (in addition to tax benefits) from partnership operations and the anticipated sale of the underlying properties when, in fact, defendants knew such benefits were highly unlikely to materialize and that any proceeds from the sale of the properties would be diverted to the defendants....

There is no indication as to who made this alleged representation, when it was made, to which plaintiffs it was made, or whether it was written or oral. Plaintiffs allege only that the seventeen misrepresentations listed in paragraph 25 of the Complaint "are contained in substance or in fact in all of the offering memoranda or accompanying sales literature."[7]

**5.** Where securities law fraud or mail or wire fraud offenses are alleged as predicate acts for RICO violations, such allegations are subject to the pleading requirements of Rule 9(b). *See, e.g., Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 49–50 (2d Cir.1987), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988), *overruled on other grounds, United States v. Indelicato*, 865 F.2d 1370 (2d Cir.1989) (en banc); *Zola v. Gordon*, 685 F.Supp. 354, 372 (S.D.N.Y.1988).

**6.** Paragraph 8 of the Complaint explains that from time to time the defendants who were the general partners and their affiliates are referred to as "sponsors."

**7.** Several of the alleged misrepresentations set forth in paragraph 25 of the Complaint are quoted verbatim from various "BH Newsletters." Although plaintiffs refer to these newsletters as part of the sales literature accompanying the offering memoranda, defendants contend that such material was only distributed to limit-

It is true that if defendants are insiders or affiliates participating in the offer, a reference to the offering memorandum is sufficient to identify the "time, place, content and speaker" requirement of Rule 9(b). *Quaknine v. MacFarlane*, 897 F.2d 75, 80 (2d Cir.1990). "Furthermore, no specific connection between fraudulent representations in the Offering Memorandum and particular defendants is necessary where [ ] defendants are insiders or affiliates participating in the offer of the securities in question." *Luce v. Edelstein*, 802 F.2d 49, 55 (2d Cir.1986).

However, this case involves numerous offering memoranda and numerous defendants, many of whom had no involvement in the offer or sale of limited partnership interests or who were involved with only one of the partnerships. "While it is clear that general partners offering limited partnerships are insiders for purposes of Rule 9(b), the standard is less clear with respect to other types of defendants...." *Friedman v. Arizona World Nurseries Ltd. Partnership*, 730 F.Supp. 521, 531 (S.D.N.Y.1990), *aff'd*, 927 F.2d 594 (2d Cir. 1991); *see also DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1248–49 (2d Cir.1987) (dismissing action against four corporate defendants since they were only affiliates or subsidiaries of the principal defendant, and there was no allegation that they participated in preparing the offering memorandum; dismissing action against some individual defendants because there was no allegation that they were directors or officers when the Offering Memorandum was issued or the specified class of plaintiffs bought their limited partnership interests). Defendants in this case include not only general partners, but also managers of the properties and various affiliates of the general partners. While plaintiffs do allege that "[e]ach of the individuals and entities identified above were controlling persons of each other," such an allegation is insufficient to establish that each was an "insider," since there

is no allegation that any of them controlled the content of the misrepresentations and omissions in the offering memoranda. *Cf. I. Meyer Pincus & Assocs. v. Oppenheimer & Co.*, 1989 Fed.Sec.L.Rep. (CCH) ¶ 94,-366, at 92,406, 1989 WL 31676 (S.D.N.Y. March 30, 1989) (identification of defendants solely on the basis of their corporate affiliation does not sufficiently connect any of them to the issuance of allegedly fraudulent statements in the prospectus); *but cf. Kane v. Wichita Oil Income Fund*, 1991 WL 233266, at *3 (S.D.N.Y.1991) ("insider" status found where complaint adequately described the role of each defendant and specifically alleged the controlling role of all defendants in preparing the offering memorandum).

Accordingly, the Court concludes that the allegations attributing the alleged wrongdoing to "defendants" or to "the sponsors of the partnership" are insufficient under Rule 9(b). "[P]laintiffs cannot satisfy Rule 9(b) by masking the lack of factual allegations against each defendant through broad allegations which combine the acts of several defendants to create the impression that all engaged in every aspect of the alleged fraud." *O'Brien v. National Property Analysts Partners*, 719 F.Supp. 222, 229 (S.D.N.Y.1989).

*Failure to State a Claim*

■ In considering a motion to dismiss the complaint under Fed.R.Civ.P. Rule 12(b)(6), the court "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). In order to prevail on a motion to dismiss, the moving party must demonstrate "beyond doubt that the [nonmoving party] can prove no set of facts in

---

ed partners who had already made their investments. In any event, the allegations grounded on misrepresentations contained in such newsletters fail to satisfy the requirements of Rule

9(b) in that they do not identify which defendants are responsible for the statements or to which plaintiffs the newsletters were sent.

support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Dahlberg v. Becker,* 748 F.2d 85, 88 (2d Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985). A court must accept as true the factual allegations accompanying the complaint and draw all reasonable inferences in favor of the nonmoving party. *See Cosmas v. Hassett,* 886 F.2d 8, 12 (2d Cir.1989).

## A. RICO

■ RICO authorizes a private cause of action for "[a]ny person injured in his business or property by reason of a violation of Section 1962." 18 U.S.C. § 1964(c). To state a claim for damages based upon a violation of Section 1962, a plaintiff must allege the following elements: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley Inc.,* 719 F.2d 5, 17 (2d Cir.1983), *cert. denied,* 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984). "Mere commission of the predicate offenses" is not enough to state a claim. *See Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985).

■ RICO Section 1962(a) makes it unlawful "for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity … to use or invest … such income … in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in interstate or foreign commerce." 18 U.S.C. § 1962(a). A violation of Section 1962(a) "consists of investing income derived from a pattern of racketeering activity to acquire an interest in, establish, or operate an enterprise; the violation is not established by mere participation in predicate acts of racketeering." *Quaknine v. MacFarlane,* 897 F.2d 75, 82 (2d Cir.1990). Accordingly, to state a claim under Section 1964(c) for a violation of

Section 1962(a), a plaintiff must allege an injury arising from the use or investment of income derived from racketeering. *Id.; see also Vista Co. v. Columbia Pictures Indus., Inc.,* 725 F.Supp. 1286, 1299 (S.D.N.Y.1989).

■ Plaintiffs have not alleged the necessary elements of a claim under Section 1962(a). They have only alleged injury resulting from the racketeering acts themselves, as opposed to alleging injury by reason of the use or investment of racketeering income. *See* Cmplt. at ¶ 45. Consequently, the Complaint does not state an actionable claim under Section 1962(a) and must be dismissed.

■ Section 1962(c) prohibits the use of a pattern of racketeering activity in the conduct of a RICO enterprise's affairs. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). A "pattern of racketeering activity" is defined in § 1961 as "at least two acts" of prohibited conduct within a ten-year period. These "predicate acts" are defined as including specifically enumerated federal criminal offenses, such as securities fraud, mail fraud, or wire fraud. 18 U.S.C. § 1961. To satisfy the pattern element, plaintiffs must plead the commission of at least two predicate acts "that were related and amounted to, or threatened the likelihood of, continued criminal activity." *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989).

### 1. Securities Fraud

Defendants assert that plaintiffs' action under § 1962(c) must fail since the Complaint fails to allege adequately the predicate violations of securities fraud, mail fraud or wire fraud. Plaintiffs argue that the Complaint properly pleads valid claims for securities fraud which, although possibly time-barred, are proper predicate acts under RICO.

In order to prevail on a claim of securities fraud under Section 10(b), plaintiffs must prove: (1) material misstatements or omissions; (2) indicating an intent to de-

ceive or defraud; (3) in connection with the purchase or sale of a security; (4) upon which plaintiffs reasonably and detrimentally relied. *See Luce v. Edelstein,* 802 F.2d 49, 55 (2d Cir.1986). Defendants attack the sufficiency of the securities fraud predicates on the grounds that plaintiffs have failed to allege the necessary elements of an action under Section 10(b). Defendants argue that: (a) plaintiffs could not have relied upon the projections and statements respecting potential economic benefits of an interest in the partnership since the PPMs were replete with "cautionary language;" (b) much of the information of which the withholding is alleged to have been false and misleading was in fact disclosed; and (c) the Complaint fails to adequately allege that each defendant acted with fraudulent intent.

### a. Reasonable Reliance

■ The Complaint alleges that the offering materials contain intentional misrepresentations or omissions as to the potential cash and tax benefits of the partnership. However, it is well established in this Circuit that, with respect to future projections and other expectations which were expressed in the offering memorandum or in the attachments thereto, there is no liability under § 10(b) for statements in an offering memorandum that "bespeaks caution." *Luce v. Edelstein,* 802 F.2d at 56; *Haggerty v. Comstock Gold Co.,* 765 F.Supp. 111, 115 (S.D.N.Y.1991) (no reasonable reliance where offering memorandum bristled with warnings "as to the extremely risky nature of the investment described therein, as well as the highly speculative nature of the memoranda's projections as to future results"); *Antonoff v. Bushell,* 1991 WL 95433, at *4 (S.D.N.Y.1991) (numerous cautionary statements in the offering memorandum precluded § 10(b) liability

based on allegedly misleading financial projections); *Friedman v. Arizona World Nurseries Ltd. Partnership,* 730 F.Supp. 521, 541 (S.D.N.Y.1990), *aff'd,* 927 F.2d 594 (2d Cir.1991) (warnings and disclaimers limit degree to which an investor may reasonably rely on offering memoranda as forecast of future).

The PPMs in the instant action are replete with warnings of the speculative nature of the investments and the risk that any investment may result in a loss.[8] For example, the PPM for Tree Lake Apartments Associates, Ltd. informs the prospective investor as follows:

7. THE INVESTMENT DESCRIBED IN THIS MEMORANDUM INVOLVES A HIGH DEGREE OF RISK. SEE RISK FACTORS. PURCHASE OF UNITS SHOULD BE CONSIDERED ONLY BY PERSONS WHO CAN AFFORD THE POSSIBILITY OF A TOTAL LOSS OF THEIR INVESTMENT AND WHO ARE NOT SEEKING A CURRENT CASH RETURN ON INVESTED CAPITAL. (pp. 4–5).

\* \* \* \* \* \*

13. SUBSTANTIAL RISKS EXIST RELATING TO THE OWNERSHIP AND OPERATION OF THE PROPERTY. THESE INCLUDE, BUT ARE NOT LIMITED TO, THE POSSIBILITY OF FUTURE OPERATING DEFICITS WHICH COULD RESULT IN FORECLOSURE OF THE LIENS ENCUMBERING THE PROPERTY. IN SUCH EVENT, INVESTORS COULD LOSE THEIR ENTIRE INVESTMENT AND INCUR SIGNIFICANT TAX LIABILITIES, WITHOUT RECEIVING CASH PROCEEDS WITH WHICH SUCH TAX

---

8. On this motion, it is entirely appropriate for the Court to review the Offering Memoranda since the Complaint specifically incorporates all of them by reference. *See* Cmplt. at ¶ 4 ("Each Plaintiff purchased securities through investments of cash and notes in certain limited partnerships (the "Berg Harmon partnerships") sponsored by the defendants as defined herein, in reasonable reliance on Private Placement Memoranda ("Memoranda") and other offering

materials prepared, issued and distributed by the defendants, as defined below, and all of which are incorporated herein by reference."). In support of their motion to dismiss, defendants have submitted three PPMs which they contend are representative of the fifty. The Court has reviewed those three PPMs and treats them as representative of all of the Offering Memoranda.

LIABILITIES COULD BE DIS-CHARGED. (p.6).

\* \* \* \* \* \*

### RISK FACTORS

POTENTIAL BENEFITS TO BE DE-RIVED FROM THE DEVELOPMENT, OWNERSHIP AND OPERATION OF REAL ESTATE, INCLUDING AN APARTMENT COMPLEX, AND SPE-CIFICALLY THE PROPERTY, IN-VOLVE SIGNIFICANT OPERATING, INVESTMENT AND TAX RISKS, IN-CLUDING THE RISKS DESCRIBED BELOW.

The benefits of an investment in the Partnership depend upon many factors over which the Partnership will have no control, including, without limitation: the continuing advantages of certain provisions of Federal, state and local tax laws; changes in economic conditions in the country, in general, and in the area in which the Property is located, in particular, which changes could give rise to an increase in local unemployment, to a change in the characteristics of the area in which the Property is located or to restrictive governmental regulation; various uninsurable or uninsured risks; defaults by the residential tenants living in the premises, the inability of the Partnership to secure replacement tenants at favorable rents upon the expiration or prior termination of the residential leases; the inability of the Seller to pay or refinance the First Mortgage; the inability of the FEC to pay or refinance the FEC wraparound mortgage; and, the management capabilities of the General Partner, the Managing Agent, and their agents and employees. (p.26).

In addition, under the section entitled Operating Risks the PPM warns:

NO ASSURANCES CAN BE GIVEN THAT THE FUTURE OCCUPANCY RATES, RENTS OR OPERATING EX-PENSES WILL BE AS PROJECTED.

\* \* \* \* \* \*

In the event that rental income from the Property is insufficient to meet operating expenses, including the debt service on indebtedness encumbering the Property, cash distributions to the Investors would be eliminated and a foreclosure on the Property could occur. In order to avoid a default under any indebtedness or other Partnership obligations, the Investors may voluntarily choose to fund operating deficits despite their lack of any obligation to do so. However, it is not possible to estimate the amounts which would have to be provided in such circumstances, or whether each Investor would agree to bear his *pro rata* share thereof. IN THE EVENT OF A MORTGAGE FORE-CLOSURE, THE INVESTORS COULD LOSE THEIR ENTIRE INVESTMENT AND INCUR SIGNIFICANT TAX LIA-BILITIES. See FEDERAL INCOME TAX CONSIDERATIONS—Sale or Other Disposition of the Property. (pp. 26–27).

Similarly, prospective investors are advised in the Notes and Assumptions to the Projected Financial Statements, appearing at the end of the PPM, as follows:

Projections are inherently subject to varying degrees of uncertainty and their achievability depends, among other things, on the reliability of the underlying assumptions and the probability of the occurrence of a complex series of future events or transactions, many of which are not within the control of the General Partner.

THE ACCOMPANYING PROJECTIONS ARE AN ILLUSTRATION OF FINAN-CIAL RESULTS BASED UPON AS-SUMPTIONS, WHICH ARE NOT NEC-ESSARILY THE MOST LIKELY. THE PROJECTIONS ARE PREPARED TO ILLUSTRATE WHAT WOULD HAP-PEN IF THE ASSUMPTIONS CON-TAINED HEREIN DID OCCUR.

In view of all of the foregoing warnings and other cautionary language contained in the PPMs, the Court concludes that sophisticated investors such as plaintiffs cannot have reasonably relied on statements in the offering materials as an accurate forecast of the future performance of their investments. Although plaintiffs now argue that they were misled into believing that the

respective projects could operate profitably, such an argument is untenable. One glance at the financial projections in the offering memoranda before the Court indicates that tax deductions, rather than profits, were the immediate benefit to be expected by an investor—the immediate prospects for the partnerships were for substantial losses. Although investors may have hoped for additional benefits from the ultimate sale or refinancing of the property, none was promised in the PPMs, which virtually abound with warnings of the risks and imponderables. Accordingly, the allegations in the Complaint suggesting that defendants misrepresented the extent of the economic benefits that would flow to the limited partners from an investment in the partnership and the allegations respecting the misleading nature of the financial projections and risk estimates must fail.

If plaintiffs can "allege particular facts demonstrating the knowledge of defendants at the time that such statements were false," *Luce*, 802 F.2d at 57, then no amount of risk disclosure in the offering materials would be adequate to avoid liability, as any representation of the partnership as a legitimate investment, even a risky one, would be a misrepresentation. In the instant action plaintiffs have not alleged particular facts showing that any of the defendants knew that the projections were unreasonable or that there was no possibility of an economic benefit to the limited partners.

b. Material Misrepresentations or Omissions

■ Plaintiffs claim that the PPM misrepresented or failed to disclose that some of the terms of the transactions were of no economic benefit to the partnership. The specific aspects of the transaction challenged by plaintiffs include the terms of the wraparound mortgage and the allegedly excessive purchase price of the properties. *See* Cmplt. at ¶ 27(m), (n), (o), (p), and (t).

The goal of the anti-fraud provisions of the securities laws is full disclosure, not substantive review of the underlying transaction by the courts. *Antonoff v. Bushell*, 1991 WL 95433, at *3 (S.D.N.Y.1991). Where the seller of securities makes full and objective disclosure of the material factual matters respecting the transaction, the seller need not characterize its terms as unreasonable or unwarranted. *Id.* In the instant case, the terms of the wraparound mortgages and the purchase price of the properties were fully disclosed in the PPMs. Moreover, the PPMs specifically warned that "there can be no assurance that the fair market value of the Property will at all times exceed the non-recourse debt encumbering the Property." Tree Lake PPM at 60.

Whether the terms complained of were unreasonable or unwarranted was for plaintiffs themselves to decide—the securities laws were not enacted to protect sophisticated investors from their own errors of judgment. *Haggerty v. Comstock Cold Co.*, 765 F.Supp. 111, 115 (S.D.N.Y.1991) (citations omitted). Accordingly, this set of allegations is dismissed pursuant to 12(b)(6) for failure to allege the misrepresentation element of a Section 10(b) claim.

■ Plaintiffs' allegation that defendants failed to disclose the payment of certain commissions and fees to accountants and other financial advisors is meritless. Fees to accountants, financial advisors, and others were fully disclosed in the PPMs. *See* Tree Lake PPM at 22 (Use of Proceeds). The section of the PPM entitled *Fees, Profits and Compensation of the General Partner and Affiliates* includes a summary of the types and amounts of compensation, fees or other distributions, including fees for financial consulting and tax advice and various services rendered by the Placement Agent, to the General Partner and affiliates. Allegations that the fees received by defendants in connection with the partnership transactions were excessive or unwarranted also fail to state a claim under Section 10(b) since the fees paid to defendants and others were fully disclosed in the PPMs. Moreover, the PPM expressly warned: "THE FOLLOWING ARRANGEMENTS FOR COMPENSATION AND FEES TO THE GENERAL PARTNERS AND CERTAIN AFFIL-

IATES WERE NOT DETERMINED BY ARM'S LENGTH NEGOTIATIONS WITH THE PARTNERSHIP." *See* Tree Lake PPM at 51.

There was no apparent misrepresentation, and plaintiffs' allegations regarding the payment of fees accordingly fails to state a claim.

### c. Scienter

■■■ The Complaint is further deficient in its allegation of the scienter element. For liability to attach under Section 10(b), plaintiffs must plead and prove scienter on the part of each of the defendants. As noted above, plaintiffs' allegations regarding scienter are plainly insufficient to charge each of the defendants with intentional fraudulent conduct—it is not enough to argue that all of the defendants are insiders who earned substantial sums from the syndications. *Luce* and *DiVittorio* only held that the strict requirements of Rule 9(b) apply more liberally in very limited circumstances as to those who participated in drafting an allegedly fraudulent prospectus. The Second Circuit recently warned that *Luce* and *DiVittorio* "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir.1990). "[A] complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard." *Id.*

### 2. Mail Fraud

■■■ The Complaint also fails adequately to allege the predicate violations of the mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343. The mail fraud statute provides in relevant part that:

[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations or promises, ... for the purpose of executing such scheme or artifice (or attempting to do so) [uses the mails or causes them to be used] shall not be fined more than $1,000 or imprisoned not more than five years, or both.

The applicable language of the wire fraud statute is nearly identical and the same analysis is applicable to both statutes. *Carpenter v. United States*, 484 U.S. 19, 25 n. 6, 108 S.Ct. 316, 320 n. 6, 98 L.Ed.2d 275 (1987). A RICO claim predicated on mail or wire fraud must specify (1) which defendants used the mail or wire services; (2) what was transmitted; (3) the date of the transmission; and (4) to whom the communication was sent. *Antonoff v. Bushell*, 1991 WL 95433 (S.D.N.Y.1991).

■■■ Plaintiffs conclusorily allege the use of mail and wire services as follows:

(a) Defendants utilized the United States mails in furtherance of their scheme to defraud, in violation of 18 U.S.C. § 1341, by repeatedly mailing or causing to be mailed to plaintiffs the Memoranda and other offering materials to plaintiffs and utilizing the mails to communicate among themselves and with third parties.

(b) Defendants utilized interstate wire communications in furtherance of their scheme to defraud, in violation of 18 U.S.C. § 1343, by, communicating among themselves, with third parties on the telephone on numerous occasions throughout the course of their scheme, concerning the 'investments.'

Cmplt. at ¶ 37. Such allegations are insufficient to plead the predicate acts of mail or wire fraud.

In sum, plaintiffs have not pleaded adequately the RICO predicate acts of mail fraud, wire fraud, or securities fraud. Accordingly, plaintiffs' claim against defendants for violation of Section 1962(c) is dismissed without prejudice.

■■■ Plaintiffs' RICO conspiracy allegation also fails to state a claim. 18 U.S.C. § 1962(d) requires an allegation that a "defendant himself at least agreed to commit two or more predicate crimes." *United States v. Ruggiero*, 726 F.2d 913, 921 (2d Cir.), *cert. denied*, 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984). The defendant need not have committed the acts; only the agreement to commit the statutorily prescribed conduct is required. *United*

*States v. Teitler,* 802 F.2d 606, 613 (2d Cir.1986). The Complaint alleges:

All of the defendants conspired among themselves to further the scheme to defraud, which was in violation of 18 U.S.C. § 1962(c) as described above. By knowingly and willingly participating in the conspiracy, defendants violated 18 U.S.C. § 1962(d).

Cmplt. at ¶ 44. Such an allegation falls short of alleging that each defendant personally agreed to commit two or more predicate acts. *See Friedman,* 730 F.Supp. at 548–49 (allegation that defendants "conspired to and did participate in the conduct of the above enterprise's affairs through a pattern of racketeering activity ..." insufficient to satisfy the requirements of Section 1962(d)); *Reinfeld v. Riklis,* 722 F.Supp. 1077, 1084 (S.D.N.Y.1989) (allegation that defendants "committed, caused to be committed, or *agreed to the commission of [ ] the predicate crimes alleged* ..." insufficient to state a claim under Section 1962(d)). To state a claim under Section 1962(d), it is not enough to allege that the defendant agreed that the crimes should be committed by others. *Zola v. Gordon,* 685 F.Supp. 354, 377 (S.D.N.Y. 1988).

 Rule 9(b) does not require the particularized pleading of the conspiracy itself in a RICO claim. *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 26 n. 4 (2d Cir.1990). The pleading of a conspiracy is subject to the more liberal requirements of Rule 8(a). "Even so, the complaint must allege some factual basis for a finding of a conscious agreement among the defendants." *Id.; Landy v. Heller, White & Co.,* 783 F.Supp. 125 (S.D.N.Y.1991). In the instant action, there are no factual allegations supporting an inference that the various defendants consciously agreed to become part of a RICO conspiracy. Accordingly, plaintiffs' claim against defendants for violation of Section 1962(d) is dismissed without prejudice.

*Controlling Person Liability under RICO*

 The Complaint in the instant action also includes a RICO claim against Primeri-ca, BEI, and Berg, alleging both controlling person liability and direct liability on the part of those defendants. Vigorously disputing the RICO claim, the Berg defendants argue that the allegations against it are far too vague and conclusory to support the claim.

This Court has previously held that in order to connect a controlling person with a RICO claim, a plaintiff must establish facts that show criminal liability on the part of the controlling person for the controlled person's acts, because section 1961 defines acts to be racketeering only if they are among the enumerated felonies punishable under the laws of the United States. *See Bingham v. Zolt,* 683 F.Supp. 965, 974 (S.D.N.Y.1988); *Frota v. Prudential–Bache Securities, Inc.,* 639 F.Supp. 1186, 1192 (S.D.N.Y.1986); *Levine v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 639 F.Supp. 1391, 1396 (S.D.N.Y.1986). In order for a controlling person to be held criminally liable under [section 20 of the 1934 Act], it must be shown that the controlling person knowingly used the controlled person to commit the illegal act. *Frota,* 639 F.Supp. at 1192.

In the instant case, the Complaint fails adequately to allege that Primerica or BEI themselves committed any of the requisite predicate acts or acted with the requisite criminal intent. The Complaint describes BEI only as "a public company whose shares were listed on the New York Stock Exchange," Cmplt. at ¶ 5(e), and Primerica as a corporation which acquired BEI in early 1985 for more than $30 million, Cmplt. at ¶ 5(v). The Complaint does not allege that Primerica or BEI played any part in the alleged misdeeds or had any knowing involvement in the purported fraud.

Nor can the Court say at this time that the Complaint sufficiently alleges that Berg himself committed any of the requisite predicate acts or acted with the requisite criminal intent. Although the Complaint does allege that "[t]he principle architects of the fraudulent scheme were Harmon and Berg" and that "Harmon, Berg and entities formed and controlled by them decided to utilize devices which amounted to an elaborate 'Ponzi' or pyra-

mid scheme," such allegations are wholly conclusory in nature. Moreover, while Berg's status as president and chairman of the board of two entities which participated as joint venturers in entities which were general partners of certain Berg Harmon partnerships may suffice to tie him to misrepresentations in offering materials, it is not clear whether there remain any actionable misrepresentations or omissions for which Berg is alleged to be responsible. Accordingly, the RICO claim as against Primerica, BEI, and Berg is dismissed without prejudice.[9]

*Pendent State Law Claims*

Dismissal of pendent state law claims is appropriate where the federal claims to which they were appended have been dismissed by the Court. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). However, in light of the Court's ruling that plaintiffs shall have a limited opportunity to amend the Complaint, dismissal of the state law claims is premature. Similarly, the Court will not rule at this time on defendants' assertion that the Complaint fails to state a claim under state law with respect to fraud, negligence, and breach of fiduciary duty.

## CONCLUSION

For the foregoing reasons, plaintiffs' Second Amended Complaint is dismissed without prejudice pursuant to Fed.R.Civ.P. Rules 9(b) and 12(b)(6). Plaintiffs shall have leave to replead within thirty days from the date of this decision those claims which the Court has dismissed without prejudice.

SO ORDERED.

---

9. The Smith and Johnstown defendants have joined in this motion without submitting papers of their own. Without discussing the particular allegations relating to those defendants, the Court notes that the allegations respecting the Smith and Johnstown defendants are insufficient to charge them with controlling person liability under RICO. To charge controlling person liability under RICO, the Complaint must allege facts which demonstrate criminal liability on the part of the controlling person for the controlled persons acts. The present deficiencies in the Complaint make it impossible for the Court to find that plaintiffs have met their burden of pleading each defendant's actual knowledge of the alleged fraudulent conduct, much less the specific intent necessary to commit the alleged crimes.