**Eric GOLDFINE, Eric Goldfine Self–Employed Retirement Plan and Trust, and Adza, LLC, Plaintiffs,**

**v.**

**Michael SICHENZIA, Lisa Sichenzia, Patrick Cottrell, Catherine N. Coughlin, Terence M. Coughlin, Frank E. DeEsso, Betty Grahn, Denise Grahn, Dutchess Capital Corp., Modutek, Inc., Ellenville Apartments, Inc., Renwick Row Associates, L.L.C., Carrera Equities, Ltd., PJC Equities, Inc., Main Street Holdings USA, Ltd., Aegean Equities, LLC, Artesian Abstract, Inc., Old Republic National Title Insurance Company, "John Doe", said name being fictitious and intend-**

ed to represent one or more unnamed co-conspirators, aiders and abetters, participants, or employees of the enterprise named herein whose names and addresses are currently unknown to the plaintiffs, Defendants.

Michael Sichenzia, Lisa Sichenzia, Patrick Cottrell, Betty Grahn, Denise Grahn, Dutchess Capital Corp., Modutek, Inc., Ellenville Apartments, Inc., Renwick Row Assoc., L.L.C., s/h/a Renwick Row Associates, L.L.C., Carrera Equities, Ltd., PJC Equities, Inc., Main Street Holdings USA, Ltd., and Aegean Equities, LLC, Third Party Plaintiffs,

v.

Chris Gedney and Richard E. Grayson, Esq., Third Party Defendants.

No. 00 Civ. 0372.

United States District Court, S.D. New York.

Sept. 14, 2000.

Warren Wynshaw, Mahopac, NY, for plaintiffs.

Anthony J. Pirrotti, Jr., Pirrottti & Pirrotti, Ardsley, NY, Kenneth P. Horenstein, Marshall, Conway & Wright, P.C., New York City, Peter R. Chatzinoff, Rivkin, Radler & Kremer, Uniondale, NY, for defendants.

## MEMORANDUM DECISION AND ORDER DISMISSING ACTION

McMAHON, District Judge.

In the recent case of *Spoto v. Herkimer County Trust*, 2000 WL 533293 *1 (N.D.N.Y. Apr.27, 2000), Judge Howard G. Munson of my sister Court made the following prescient observation:

> Plaintiffs' instant action is a superlative example of why some legal minds posit that the civil provisions of [RICO] are the most misused statutes in the federal corpus of law.

2000 WL 533293 at * 1.

Judge Munson knew whereof he spoke. I surmise that every member of the federal bench has before him or her at least one—and possibly more—garden variety fraud or breach of contract cases that some Plaintiff has attempted to transform into a vehicle for treble damages by resort to what another respected jurist, Judge Allan Schwartz of this Court has referred to as "the litigation equivalent of a thermonuclear device"—a civil RICO suit. *Schmidt v. Fleet Bank* 16 F.Supp.2d 340, 346 (S.D.N.Y.1998)(quoting *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir.1991)). All too frequently, these damning actions are commenced without the Plaintiff's (or his lawyer's) being aware of the most fun-

damental principles of the law that governs allegations of racketeering in a civil action. This case is more of the same.

The reasons why these Plaintiffs' claims for violation of the civil RICO statute must be dismissed are legion. The Plaintiffs have brought their complaint prematurely, in that they have not yet suffered any RICO injury. The complaint also fails to allege that they were injured by reason of the use or investment of racketeering income in a RICO enterprise, or indeed that any RICO enterprise exists separate and apart from the acts that, according to Plaintiffs, constitute the alleged racketeering activity. To the extent that Plaintiffs allege mail and wire fraud as predicate acts their contentions are legally insufficient; and to the extent they assert that certain of the defendants aided and abetted racketeering activity, they fail to state a claim because the law recognizes no such claim. Finally, to the extent they allege conspiracy, the claim fails because the substantive counts themselves are deficient.

Plaintiffs' briefs in opposition to the pending motions to dismiss betray either a woeful ignorance of these settled principles of law or a blithe disregard of them. Whatever the reason, the mere fact that Plaintiffs have appended RICO claims to some 118 separate state law claims is not sufficient to catapult them into federal court. The federal claims (Counts 119 and 120) are dismissed, and the Court declines to exercise supplemental jurisdiction over those 118 state law claims.

### STATEMENT OF FACTS

Plaintiffs Eric Goldfine Self-employed Retirement Plan and Trust, (hereinafter "SERPT") and Adza, LLC (hereinafter "ADZA"), were the lenders on a series of several loans to various defendants which were secured by mortgages and notes. The secured loans were made between February, 1998 and January, 1999. Plaintiff Eric Goldfine is identified in the pleadings only as the Trustee of SERPT. There is no allegation that Plaintiff Gold-fine personally ever made any loans, or has any other connection to the defendants with respect to this case.

The Defendants Michael Sichenzia and Lisa Sichenzia are husband and wife. Defendant Patrick Cottrell, is a business associate of the Sichenzias, originally introduced to them as a mortgage broker. Mr. Cottrell and Mr. and Mrs. Sichenzia, individually or through companies they owned, subsequently made real estate investments, some of which are at issue in this action.

The remaining "Sichenzia defendants" include Denise Grahn, Lisa Sichenzia's sister, and Betty Grahn, Lisa and Denise's mother, as well as Dutchess Capital Corp., ("Dutchess"), Modutek, Inc., ("Modutek"), Ellenville Apartments, Inc., ("Ellenville"), Renwick Row Assoc. L.L.C., s/h/a Renwick Row Associates, L.L.C., ("Renwick"), Carrera Equities, Ltd., ("Carrera"), PJC Equities, Inc., ("PJC"), Main Street Holdings, USA, Ltd., ("Main Street") and Aegean Equities, L.L.C., ("Aegean")—all of which are entities that were or are owned by the Sichenzias and/or Mr. Cottrell.

The Amended Complaint alleges that loans were made by SERPT and/or ADZA to Lisa Sichenzia, (Def. Exh A, ¶¶ 54–56, 177), Michael Sichenzia, (*Id.* ¶¶ 284, 324, 362, 440, 493) Renwick, (*Id.* ¶¶ 238, 410), Carrera, (*Id.* ¶¶ 284, 324, 362) and Main Street, (*Id.* ¶¶ 440, 493).

Defendants Artesian Abstract, Inc., Catherine Coughlin and Terence Coughlin (collectively, the Artesian defendants) are alleged to have failed to record in a timely manner various instruments, including mortgages, deeds, and agreements consolidating, modifying and extending loans, all of which document the various loans described above between Plaintiffs and the Sichenzia defendants. Plaintiffs contend that, by failing to timely record these instruments, the Artesian defendants lost priority on certain mortgages, and certain of the properties were purchased by third parties without any notice of encumbrance.

According to Plaintiffs' Civil RICO Statement, the Artesian defendants' actions allowed the Sichenzia defendants to "default on the loans, obtain additional monies from third parties who took title to the property or gave mortgages without constructive knowledge of Plaintiffs' (supposedly) prior liens." (Plaintiffs' Civil RICO Statement, Def. Exhibit B, at p. 24).

Defendant Old Republic National Title Insurance Company, through its agent, Artesian Abstracts, allegedly caused mortgage priority insurance policies to be issued with respect to the various mortgaged properties. In the main, it appears that Old Republic is alleged to be vicariously liable for the actions of Artesian and the Coughlins.

Defendant Frank DeEsso is an attorney. He represented various of the Sichenzia defendants and/or Artesian (it is not clear which, or whether the client differed in different deals) in connection with some of the loan transactions at issue. DeEsso allegedly took various actions in connection with those presentations, including the provision of opinion letters, that Plaintiffs allege were wrongful as to them, even though DeEsso was not Plaintiff's lawyer.

Plaintiffs allege, in wholly conclusory fashion, that these various co-defendants were involved in an "enterprise" under 18 U.S.C. § 1962 (the "RICO Statute"), and that they purportedly engaged in the extensive series of real estate transactions with the Plaintiffs that are documented in the complaint for the *sole* purpose of "obtain[ing] monies from the Plaintiffs under false pretenses" (Def.Exh. B, § 5[e], p. 25). The Complaint and the RICO Statement allege violations of 18 U.S.C. §§ 1962(a), (c), and (d). (Def. Exh. A, ¶¶ 529–545, pp. 86–89; Exh. B, § 1 p. 1).

Plaintiffs originally alleged that Michael Sichenzia, Lisa Sichenzia and Patrick Cottrell were the only "members" of the enterprise. (Exhibit "B", § 5[e], p. 25). In an Amended Civil RICO Statement, they added the Artesian defendants also members of the enterprise. (§ 5(e), Amended Civil RICO Statement). Plaintiffs nebulously describe the remaining Sichenzia defendants and everybody else as being "associated with the alleged enterprise". (Def.Exh. B, § 5[d], p. 25), although in the Amended Civil RICO statement DeEsso is described as being "employed by all the members of the Enterprise." At section 5(b)(A) of their original Civil RICO Statement, Plaintiffs further describe the defendants other than Michael and Lisa Sichenzia and Patrick Cottrell as "corporate shells of the defendants, participants, or aiders and abetters [sic], in the scheme, employed by the enterprise, or [ ] liable for the activities of the enterprise". (Def.Exh. B, pp. 3–4).

The complaint alleges, in addition to substantive violations of Sections 1962(a), (c) and (d) of RICO, numerous violations of State law, sounding in fraud, breach of contract, negligence and breach of fiduciary duty.

## CONCLUSIONS OF LAW

On a motion pursuant to FRCP 12(b)(6), a Complaint should be dismissed when it fails to state a claim upon which relief can be granted. Although the factual allegations of this pleading are presumed to be true, and the non-moving party is entitled to all reasonable inferences, a pleading fails to state a cause of action where it appears beyond doubt that the Plaintiff can prove no set of facts which would entitle him to relief. *See, H.J. Inc., v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). For those purposes, the Civil RICO statement is deemed to be part of the Complaint. *See A. Terzi Productions, Inc. v. Theatrical Protective Union,* 2 F.Supp.2d 485, 508 n. 16 (S.D.N.Y.1998).

Of course, where the Complaint fails to properly set forth any element of a claim, the Court must dismiss the complaint. *See Redtail Leasing, Inc. v. Bellezza,* 1999 WL 32941 at *3, RICO Bus. Disp. Guide 9670 (S.D.N.Y.1999)("The Complaint must

contain allegations concerning each of the material elements necessary to sustain recovery under a cognizable legal theory."). Moreover, the Court is not required to accept as true mere "conclusions of law or unwarranted deductions". *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir.1994).

This Court looks with particular scrutiny at Civil RICO claims to ensure that the Statute is used for the purposes intended by Congress. In an exhaustive examination of the Court's role in such cases, Judge Schwartz stated in *Schmidt:*

> In considering RICO claims, courts must strive to achieve results consistent with Congress's goal of protecting legitimate businesses from infiltration by organized crime. As one district court within this circuit has stated, Civil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device. Because the mere assertion of a RICO claim... has an almost inevitable stigmatizing effect on those named as defendants, ... courts should strive to flush out frivolous RICO allegations at an early stage of the litigation. To this end, a court's focus must be to ensure that RICO's severe penalties are limited to enterprises consisting of more than simple conspiracies to perpetuate the acts of racketeering. Thus, courts must always be on the lookout for the putative RICO case that is really nothing more than an ordinary fraud case clothed in the Emperor's trendy garb.

16 F.Supp.2d at 346 (internal citations and quotations omitted).

For the reasons set forth below, Plaintiffs' action is dismissed.

## I

## PLAINTIFF HAS NOT YET SUFFERED ANY COGNIZABLE RICO DAMAGES AND THE COMPLAINT IS PREMATURE

█ Plaintiffs admit in their Amended Complaint, as well as their Civil RICO Statement, that each and every loan was secured by a mortgage and note, most of which bind the individual Sichenzia defendants personally. They also admit that each mortgage was insured through defendants Old Republic and/or Artesian Abstract. However, Plaintiffs have made no effort to enforce those rights prior to instituting this action. Nonetheless, Plaintiffs allege that they were "deprived of money or property", as a result of the alleged acts of the Defendants, totaling the full amount of proceeds of each and every loan (Def. Exh B, § 12[a] ). Because the Plaintiffs have not exhausted the bargained-for remedies, which they admit are available to them, they have not satisfied RICO's requirement of alleging damages that are clear and definite. As a result, Plaintiffs lack standing to sue under RICO, and their claims must be dismissed.

In *First Nationwide,* the Second Circuit Court of Appeals addressed the issue of the ripeness of First Nationwide's alleged RICO damage claims on unforeclosed loans. The Court first reviewed the applicable law relating to fraud damages in general:

> The general role of fraud damages is that the defrauded Plaintiff may recover out-of-pocket losses caused by the fraud. In this case, the damages issue arises in the specific context of a fraudulently induced loan. In such cases, although the loan is procured through fraud, any amounts paid on the debt reduce the amount the Plaintiff can claim as damages resulting from the fraud. Thus, the amount of loss cannot be established until it is finally determined whether the collateral is insufficient to make the Plaintiff whole, and if so, by how much.
>
> In determining fraud damages, any amount recovered by the fraudulently induced lender necessarily reduces the damages that can be claimed as a result of the fraud. Because the fraud defendant is not liable for all losses that may occur, but only for those actually suffered, only after the lender has exhaust-

ed the bargained-for remedies available to it can the lender assert that it was damaged by the fraud, and then only to the extent of the deficiency.

*First Nationwide*, 27 F.3d 763, 768 (2d Cir.1994) (internal citations omitted).

Applying the general rule specifically in RICO context, the Court in *First Nationwide* held:

> The rule of fraud damages described above has been adopted by this Court in the context of deciding whether a defrauded Plaintiff has standing under RICO. A RICO Plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation. Furthermore, as a general rule, a cause of action does not accrue under RICO until the amount of damages becomes clear and definite. Thus a Plaintiff who claims that a debt is uncollectible because of the defendant's conduct can only pursue the RICO treble damages remedy after his contractual rights to payment have been frustrated.

*Id.* (internal citations and quotations omitted).

Similarly, in *Burke v. Dowling*, 944 F.Supp. 1036 (E.D.N.Y.1995), the Court dismissed the RICO claims of the "creditor Plaintiffs" because of their failure to plead frustration of their contractual rights:

> Based on a careful reading of the Amended Complaint, the Court concludes that in this case, the creditor Plaintiffs have not adequately alleged such frustration of their contractual rights, and that *their RICO claim is not yet ripe.*
>
> \*   \*   \*   \*   \*   \*
>
> [T]here remains—so far as the Court can tell from the pleadings—a real possibility that the creditor Plaintiffs may be able to recover all or part of their losses. Yet they have not chosen to do so through the traditional legal means available to them. Rather, they seek to recover three times what they are owed

> by application of the Federal Anti-racketeering Statute... Until these Plaintiffs can demonstrate that the orthodox methods of recovery have failed them, and that defendants' acts of racketeering have in fact caused them a loss, they should not be entitled to treble damages under RICO.

*Id.* at 1050–1052.

In the instant case, the Plaintiffs admit that there are mortgages and notes underlying the subject loans. However, nowhere do Plaintiffs allege that they made any effort whatsoever to recover their alleged losses, or even any part of such losses, by seeking to enforce any of their admitted contractual rights. Plaintiffs cannot claim that their loans are uncollectible *before* making any effort to collect them "through the traditional legal means available to them". *Burke*, 944 F.Supp. at 1051. The Plaintiffs' conclusory allegations that the notes, mortgages, and insurance policies underlying their loans are unenforceable, and that the debts are therefore uncollectible, are, simply put, legal conclusions that must be reached by a court of competent jurisdiction before they will suffer any RICO injury.

Plaintiffs' 118 separate State law claims sounding in breach of contract, breach of fiduciary duty, negligence, gross negligence, constructive trust, conversion and fraud are the very claims that Plaintiffs must pursue in order to determine whether or not they suffered any injury compensable under RICO. Plaintiffs cannot come to this Court, with only a RICO claim as a jurisdictional predicate, and obtain adjudication of the State law claims that are a necessary predicate to ripeness and standing under the very statute they claim gives this Court jurisdiction in the first instance. Were this Court to adopt Plaintiffs' pleading rationale, RICO's "clear and definite" injury requirement would be rendered moot.

RICO was not enacted for the purpose of providing a Federal forum and treble

damages for nearly every conceivable contract action under State law. Before Plaintiffs in this case have standing to treble their alleged damages under the provisions of RICO, they must first establish, "through the traditional legal means available to them", that they in fact suffered damage. *See Burke*, 944 F.Supp. 1036, *First Nationwide*, 27 F.3d 763. As Plaintiffs cannot allege "clear and definite" damages to their business or property, they lack standing under RICO, and their RICO causes of action must be dismissed.

## II

PLAINTIFFS' RICO CAUSES OF ACTION ARE DISMISSED BECAUSE PLAINTIFFS DO NOT ALLEGE THAT THEY WERE INJURED BY REASON OF ANY USE OR INVESTMENT OF RACKETEERING INCOME

■ Plaintiffs' Amended Complaint purports to set forth violations of 18 USC §§ 1962(a) and (d) under "Claim 120", at paragraphs 539–545, pp. 88–89. (*See* Def. Exh. A.) Section 8 of Plaintiffs' Civil RICO Statement further states that the Complaint alleges a violation of 18 USC § 1962(a). (Exh. B, p. 28.) However, Plaintiffs admit, at Section 8(b) of their Amended Civil RICO Statement, that they have no idea whether any alleged income was ever invested by any defendant at all, let alone that it was invested in the alleged enterprise and that they were injured *as a result of that investment.* Elsewhere, they make it quite clear that the injury they have allegedly suffered—the supposed non-collectability of their various mortgages and loans—resulted, not from the investment of any money in a RICO enterprise, but rather because of the various predicate acts (i.e., the Sichenzias defaults on the notes coupled with failure to record the mortgages promptly, which enabled the Sichenzias to obtain additional loans from other parties or to sell mortgaged properties to other parties without any recognition of Plaintiffs' rights). Be-

cause injury by reason of investment of racketeering income in an enterprise is the very foundation of a § 1962(a) claim, Plaintiffs' allegations are insufficient as a matter of law.

In determining the requirements for pleading a cause of action under § 1962(a), the Court must first look to the statutory language. 18 USC § 1964(c) provides a private right of action for "[a]ny person injured in his business or property *by reason of a violation of Section 1962 ".* (emphasis added). Section 1962(a) provides, in pertinent part:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity * * * *to invest, directly or indirectly, any part of such income, or the proceeds of such income, in the acquisition of any interest in, or the establishment or operation of, any enterprise* which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 USC § 1962(a) (emphasis added).

As held by the Second Circuit Court of Appeals in *Ouaknine v. MacFarlane*, 897 F.2d 75 (2d Cir.1990):

> Under the plain language of this section, a violation of § 1962(a) consists of investing income derived from a pattern of racketeering activity to acquire an interest in, establish, or operate an enterprise; the violation is not established by mere participation in predicate acts of racketeering. Accordingly, under the plain terms of the statute, to state a civil claim under § 1964(c) for a violation of § 1962(a), a Plaintiff must allege injury "by reason of" defendant's investment of racketeering income in an enterprise.

*Id.* at 82–83. *See also, National Council of Young Israel v. Wolf,* 963 F.Supp. 276, 280 (S.D.N.Y.1997).

Based on the above reasoning, the Court in *Ouaknine* went on to hold that:

[T]o state a claim for civil damages under § 1962(a), a Plaintiff must allege injury from the defendants' investment of racketeering income in an enterprise. Furthermore, because the District Court correctly held that Ouaknine had alleged no facts asserting injury by reason of defendants' investment of racketeering income, we affirm the dismissal of the § 1962(a) RICO claim.

*Id.* at 83.

In the instant case, neither Plaintiffs' Amended Complaint nor their Civil RICO Statement sets forth a single allegation relating to any investment whatsoever made by any Defendant, in the alleged enterprise or anywhere else, much less that the Plaintiffs were damaged or injured as a result of such investment. In fact, in Section 8(b) of Plaintiffs' Civil RICO Statement, (whether the original statement or the amended version) Plaintiffs *admit* that they have no idea whatsoever of how any "funds", whether racketeering income or not, were invested, if at all:

> [T]he use of such income is currently unknown to the Plaintiffs except to the extent that funds received by said defendants were retained by said defendants or disposed of by said defendants according to their instructions.

(Def.Exh. B, p. 28).

This sweepingly general allegation that the defendants either "retained" or "disposed of" any income they received plainly fails to allege the required: (1) investment, (2) of any income, (3) in an enterprise. Because Plaintiffs' complaint and Civil RICO Statement contain "no mention . . . of any claimed investment of racketeering income, let alone injury resulting from such investment," *Pyke v. Laughing,* 1998 WL 37599, RICO Bus. Disp. Guide 9513 (N.D.N.Y.1998), they fail to state a cause of action under 18 USC § 1962(a). Thus, Plaintiffs' RICO claims must be dismissed.

III

PLAINTIFFS' SECTION 1962(c) CLAIMS ARE DISMISSED AS AGAINST ALL DEFENDANTS AS THEY FAILED TO ALLEGE AN ENTERPRISE THAT IS SEPARATE AND DISTINCT FROM THE ALLEGED PATTERN OF RACKETEERING ACTIVITY

█ It is firmly established that, to state a claim under RICO, a Plaintiff must allege and prove the existence of an enterprise which is "separate and distinct from the alleged pattern of racketeering activity." *Black Radio Network, Inc. v. NYNEX Corp.,* 44 F. Supp.2d 565 at 580 (S.D.N.Y.1999). Plaintiffs admit that the alleged enterprise would not exist but for the alleged pattern of racketeering activity, and their RICO claims must therefore be dismissed against all moving defendants.

The Supreme Court held in *United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981) that: "[t]he enterprise is not the 'pattern of racketeering'; it is an entity separate and apart from the pattern of activity in which it engages." *Id.* at 583, 101 S.Ct. 2524. In *Schmidt v. Fleet Bank,* Judge Schwartz held that in order to determine whether the alleged enterprise is separate from the activity in which it engages, the Court should look to whether the alleged enterprise would exist in the absence of that activity:

> The enterprise cannot simply be the minimal association which surrounds the [pattern racketeering] acts. In other words, the members of the group as a whole must have a common link other than the racketeering activity. Thus, in assessing whether an alleged enterprise has an ascertainable structure distinct from that inherent in a pattern of racketeering, it is appropriate to consider whether the enterprise would still exist

were the predicate acts removed from the equation.

16 F.Supp.2d at 349 (internal citations and quotations omitted)(emphasis added).

The Court in *Black Radio Network*, thus held:

> [P]laintiffs have not alleged an enterprise separate from its pattern of racketeering activity. Even assuming that these proposed defendants were part of a continuing enterprise, it [sic] was part of that enterprise only by virtue of the alleged racketeering activity. Plaintiffs simply have not alleged an ascertainable structure distinct from that inherent in [the alleged] pattern of racketeering, and it is apparent that the alleged enterprise, including the proposed defendants, would not still exist were the predicate acts removed from the equation. Accordingly, Plaintiffs fail to state a claim under 18 U.S.C. § 1962(c).

44 F.Supp. 2d at 581 (internal citations and quotations omitted).

■ Further, in a fraud-based RICO claim, if the sole purpose of the alleged enterprise is to perpetrate the alleged fraud, there can be no enterprise for RICO purposes. *See Schmidt*, 16 F.Supp.2d at 350 ("If the purpose of the entity or the association in fact was to defraud the investors, then it has no continuity or distinct structure beyond the alleged conspiracy. In short, the enterprise in this case likely would not exist were the predicate acts removed from the equation.") (internal citations and quotations omitted).

■ In the case at bar, the Plaintiffs unequivocally stated, at section 5(b)(B) of their original Civil RICO Statement, that "[t]he purpose of the enterprise was to obtain monies from the Plaintiffs under false pretenses." (Def. Exh. B at 24.) There is no allegation in the Amended Complaint or the Civil RICO Statement of what activity, if any, the alleged enterprise ever engaged-in *other than* the alleged

predicate acts. Therefore, under the plain language of *Schmidt*, the alleged enterprise "has no continuity or distinct structure beyond the alleged conspiracy," and the Plaintiffs' RICO claims are insufficient as a matter of law.

Additionally, Plaintiffs fail to allege any chain of command of the enterprise, or how, if at all the alleged "members" functioned as an integrated group or directed the affairs of the alleged enterprise apart from the predicate acts themselves.

In an attempt to distinguish the alleged predicate acts from the "usual and daily activities of the enterprise," Plaintiffs set forth at section 6(a) of their Civil RICO Statement a series of activities that they characterize as "[t]he usual and daily activities of the members of the SAC Enterprise". (*Id.* at 25). However, whether the claimed predicate acts differed from the "usual and daily activities of the members of the enterprise" is of no moment. The test is whether the predicate acts differed from the usual and daily activities of the *enterprise itself. See Schmidt*, 16 F.Supp.2d at 349 n. 5 ("[t]hat each member of a group carries on activities distinct from the pattern of racketeering is insufficient; the group as a whole must have a common link other than the racketeering activity.")(quoting *McDonough v. National Home Ins. Co.*, 108 F.3d 174, 177 (8th Cir.1997)).

The inadequacies of the Plaintiffs' pleadings are remarkably similar to those in *Schmidt*:

> The only common factor joining the various defendants is their alleged participation in [the] scheme to defraud the Plaintiffs. The complaints do not allege facts sufficient to support an inference that the enterprise existed as a continuous structure "separate and apart" from the commission of the predicate acts alleged, or that there was an organized mechanism for directing the enterprise's

affairs on an ongoing basis beyond the fraudulent scheme alleged.

*Id.* at 350.

After this particular defect in the pleading was called to the attention of Plaintiffs' counsel at oral argument, he proffered an Amended Civil RICO Statement, which was obviously filed for the purpose of curing this problem, since the only substantive change from the original statement reflects these very allegations. The new statement (which was not timely, and for which no permission to file had been granted) replaced the "sole purpose" language with a lengthy statement of what each member of the RICO enterprise supposedly did. The new language, which merely parrots allegations made elsewhere about the functions performed by each of the alleged enterprise members in the course of their dealings with Plaintiffs, does not solve Plaintiffs' problem, because the complaint and Amended Civil RICO Statement, taken together, still fail to allege facts tending to show that the enterprise exists separate and apart from the activities complained of in the complaint. Plaintiff identifies no purpose of the enterprise except to engage in the racketeering activity, no group (as opposed to individual) activity other than the racketeering activity, and no on-going structure except the conduct of racketeering. In addition, Plaintiffs' counsel filed a letter with the court in which he claimed to have found new (unspecified) information about other, similar actions committed by the same group against other potential Plaintiffs—information that he hopes to place before the Court in the form of a newly filed lawsuit on behalf of these other, unnamed parties. Suffice it to say that a letter from Plaintiff saying "more to come" does not in any way cure the deficiencies of the complaint that is already on file.

As the Plaintiffs failed to allege the existence of an enterprise that has any existence separate and apart from the purported predicate acts, they fail to state a claim under 18 U.S.C. § 1962(c), and their Claim 119, brought under that provision must be dismissed as a matter of law.

## IV

## PLAINTIFFS' SECTION 1962(c) CLAIMS ARE DISMISSED AS AGAINST MOST DEFENDANTS, AS PLAINTIFFS FAILED TO ALLEGE THAT ANY DEFENDANT EXCEPT MICHAEL SICHENZIA AND LISA SICHENZIA OR PATRICK COTTRELL PARTICIPATED IN THE "OPERATION OR MANAGEMENT" OF THE ENTERPRISE

Liability under § 1962(c) requires a showing that *each* defendant employed by or associated with the enterprise "conduct or participate, directly or indirectly, in the conduct of [the] enterprise's affairs". In this case, the Plaintiffs failed to allege that *any* defendant satisfied this essential element. The § 1962(c) causes of action must therefore be dismissed.

Section 1962(c) of RICO provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

In *Reves v. Ernst & Young,* 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993), the Supreme Court held that § 1962(c) requires actual operation or management of the enterprise:

In sum, we hold that "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs", § 1962(c), *one must participate in the operation or management of the enterprise itself.*

*Id.* at 185, 113 S.Ct. 1163 (emphasis added).

Judge Schwartz analyzed the *Reves* "operation and management" test in *Schmidt:*

As interpreted by courts in this district and others, the "operation and manage-

ment" test... is a very difficult test to satisfy. As the Second Circuit has held, simple taking of directions and performance of tasks that are "necessary and helpful" to the enterprise, without more, is insufficient to bring a defendant within the scope of § 1962(c). Simply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable as a result. There is a substantial difference between actual control over an enterprise and association with an enterprise in ways that do not involve control; only the former is sufficient under *Reves* because the test is not involvement but control. *[I]t is not the importance of such services that determines § 1962(c) liability, but whether the provision of those services allows the defendant to direct the affairs of the enterprise.*

6 F.Supp.2d at 46 (internal citations and quotations omitted)(emphasis added).

■ In addition, the mere fact that a defendant may have *aided* in the alleged scheme to defraud, *even if that aid was intentional*, does not give rise to liability under § 1962(c). *See Biofeedtrac, Inc. v. Kolinor Optical Enterprises & Consultants, S.R.L.*, 832 F.Supp. 585, 592 (E.D.N.Y.1993)("[P]laintiff has adduced no facts to suggest that [defendant's] actual or projected role was to lead, run, manage or direct any part of the enterprise. Thus, he did not participate in the conduct of an enterprise and did not violate § 1962(c), even though he may have intentionally assisted a scheme to defraud.") (internal quotations omitted).

Plaintiffs fail to set forth any facts to show that most of the defendants were leaders, managers or directors of the SAC enterprise. Reading the allegations of the complaint most generously to the Plaintiffs, there are allegations sufficient to charge Michael and Lisa Sichenzia and Patrick Cottrell with leading, running, managing or directing any of the alleged enterprise. But there is no allegation that the other Defendants were leaders or managers of the enterprise.

For example, there is no allegation that Betty Grahn or Denise Grahn ever even spoke with any other defendant about the loans Plaintiffs claim were fraudulent, let alone that they were involved with the operation and management of the alleged enterprise, the sole purpose of which, Plaintiffs claim, was to procure those loans. The only allegations against Betty and Denise Grahn are that Betty Grahn purchased two of the parcels several months *after* the Plaintiffs made the loans, and that Denise Grahn notarized the signatures of other defendants. Denise Grahn's name is not even mentioned in section 4 of Plaintiffs' Civil RICO Statement, which purports to be a "Description of the Pattern of Racketeering Activity".

■ The business entities named by the Plaintiffs in their § 1962(c) claim, as opposed to the individual defendants, cannot possibly "lead, run, manage or direct" the affairs of the alleged enterprise, or, for that matter, act "intentionally" at all, since corporations can act only through their individual officers, directors or agents (who are not explicitly identified).

Similarly, there are no allegations of leading, running, managing or directing the alleged enterprise made against the Artesian Defendants, D'Esso or Old Republic. Rather, the complaint asserts that they "engaged in or aided and abetted a pattern of indictable criminal acts". (Complaint ¶ 535). The specific allegations of the complaint identify what they did as, in essence, failing to record mortgages and other instruments affecting the loans made by Plaintiffs, wrongfully issuing priority of title insurance, offering false documents for filing, and engaging in various acts of negligence and breach of duty. None of those pages and pages of contentions remotely suggests how this transformed the non-Sichenzia Defendants into leaders, managers or directors of the enterprise of which they are not even alleged to be members (or, in the case of the Artesian

Defendants, were not alleged to be members until the Court suggested that the complaint was fatally deficient). Moreover, following *Biofeedtrac*, even if the Plaintiffs' Amended Complaint and Civil RICO Statement are construed to allege that the 1962(c) Defendants intentionally assisted in the purported scheme, such allegations are insufficient as a matter of law to properly plead a cause of action under section 1962(c). Plaintiffs' § 1962(c) claims must therefore be dismissed as to all Defendants other than the Sichenzia defendants.

## V

## PLAINTIFFS' RICO CLAIMS FAIL TO ALLEGE WITH PARTICULARITY A SCHEME TO DEFRAUD RATHER THAN A MERE BREACH OF CONTRACT, WHICH MANDATES DISMISSAL AGAINST THE SICHENZIA DEFENDANTS AND ARTESIAN

■ It is fundamental that a Plaintiff who contends that the counterparty to a contract never intended to perform the terms of that contract may only prevail in an action for fraud under limited circumstances:

> When a Plaintiff claims that the defendant breached a contract that he never intended to honor, he may only present that claim as an action sounding in fraud if (1) the defendant owed a legal duty to the Plaintiff "separate from the duty to perform under the contract"; (2) the defendant makes a fraudulent misrepresentation that is "collateral or extraneous" to the contract; or (3) the Plaintiff seeks special damages unrecoverable as contract damages. *See Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13, 20 (2d Cir. 1996).

*Cougar Audio, Inc. v. Reich*, 2000 WL 420546 at * 6 (S.D.N.Y. April 18, 2000).

As against the Sichenzia Defendants, Plaintiffs assert that they were defrauded into entering into contracts (mortgages, loans, etc.) that the counterparty never intended to honor. These alleged frauds form the basis of the predicate acts of mail and wire fraud that purport to underlie the RICO claims. At section 2 of their Civil RICO Statement, Plaintiffs set forth their theory of the "alleged misconduct and basis of liability of each Defendant" as follows:

> Defendants [Michael Sichenzia, Lisa Sichenzia and Patrick Cottrell] borrowed money from the Plaintiffs and executed and delivered false and invalid mortgages on said properties.... [A]fter the closing of the mortgage loans, the Coughlins retained possession of the mortgages and did not record the mortgages until such time as the Sichenzias and Cottrell either sold the real property to others or mortgaged the property to others. These other defendants are corporate shells of the defendants, participants, or aiders and abetters [sic], in the scheme, employed by the enterprise, or were liable for the activities of the enterprise.

(Def. Exh. B at 2–4).

Plaintiffs fail to identify any legal duty owed to the Plaintiffs by any of the Sichenzia Defendants that is separate from the duty to perform under the mortgages and notes as required by *Cougar*. Although there are literally dozens of purported claims in the Amended Complaint based on alleged breach of fiduciary duty, they are made against Artesian Abstract and/or the Coughlins, not the Sichenzia Defendants, and, therefore, cannot be the basis for a fraud claim against the Sichenzia Defendants.

■ The Plaintiffs also do not claim that any alleged material misrepresentation made by any of the moving defendants was "collateral or extraneous" to the notes and mortgages that underlie their causes of action. The Plaintiffs claim that the mortgages are "false and invalid" because "the Sichenzias and Cottrell closed on the mort-

gage loans prior to the date they obtained title to the properties". (Def. Exh. B at 2). This allegation, even if true, does not show any misrepresentation that is collateral or extraneous to the underlying mortgages, and therefore cannot form the basis for a fraud claim.

Without making any legally sufficient allegation of fraud, Plaintiffs cannot allege mail fraud. Clearly, the Plaintiffs in this case are simply "attempt[ing] to dress a common law breach of contract...claim as a RICO claim." *Spoto v. Herkimer County Trust*, 2000 WL 533293 at *5 (N.D.N.Y. Apr.27, 2000). Because there is no basis upon which Plaintiffs can convert their common law contract claims into even common law (as opposed to RICO) fraud claims, the RICO claims against the Sichenzia Defendants are deficient as a matter of law, and Count 119 must be dismissed.

As against the Artesian Defendants, Plaintiffs allege, in their complaint and RICO Statement, that Artesian "accomplished" the fraudulent scheme by mailing or faxing copies of one defective mortgage, as well as certain letters and satisfactions of mortgages, to the Plaintiffs. (Cplt., Claim 16, and Amended RICO Statement at pp. 8, 23). The allegations concerning the letters can be quickly dismissed, as the contents thereof are not set forth with specificity, nor are any misrepresentations identified with the specificity required by Fed.R.Civ.P. 9(b). As for the supposed transmission of defective insurance policies (most of which appear to have been sent by overnight courier, not via the mail or interstate wire), Plaintiff does not explain how the act of transmission was incidental to an essential part of the alleged fraudulent scheme to withhold and fail to file instruments so as to defeat Plaintiffs' priority liens, *see Schmuck v. United States*, 489 U.S. 705, 712, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989)—nor is it apparent to this Court that is was incidental to an essential part of the scheme. Thus, Plaintiffs have not sufficiently pled violations of 18 U.S.C. §§ 1962(a) and (c) against those Defendants, either.

## VI

## PLAINTIFFS' CLAIMS BASED UPON "AIDING AND ABETTING" ARE DISMISSED, AS THERE IS NO PRIVATE RIGHT OF ACTION FOR AIDING AND ABETTING A RICO VIOLATION

Plaintiffs allege, at Paragraph 535 of the Amended Complaint:

> Each of the defendants have engaged in or aided and abetted a pattern of indictable criminal acts including, but not limited to, mail fraud, in violation of 18 USC § 1341; wire fraud, in violation of 18 USC § 1343; aiding and abetting in violation of 18 USC § 2; and [sic] which, in turn, constitute [sic] "racketeering activity" as that term is defined in 18 USC § 1961(5).

Plaintiffs' Civil RICO statement, at Paragraph 4(a), states: "The specific statutes that were allegedly violated are 18 USC § 1341 (mail fraud), § 1343 (wire fraud), and § 2 (aiding and abetting)." The final paragraph of Item "2" of Plaintiff's Civil RICO Statement (pp. 3–4) describes the roles of 13 separate named defendants, along with the "John Doe" defendants, as follows:

> These other defendants are corporate shells of the defendants, participants, or aiders and abetters [sic], in the scheme, employed by the enterprise, or were liable for the activities of the enterprise.

While this rather vague and general pleading does not sufficiently delineate among the various categories of defendants, it would appear that the only allegations against (1) the Sichenzia defendants other than Lisa and Michael Sichenzia and Cottrell, (2) Old Republic, (3) DeEsso, and (4) certain allegations against the Artesian

defendants are allegations of aiding and abetting.[1]

█ Courts in this District have long held that there is no private right of action for aiding and abetting a RICO violation. *See LaSalle National Bank v. Duff & Phelps Credit Rating Co.*, 951 F.Supp. 1071, 1088–1089 (S.D.N.Y.1996)("the Court ... recommends dismissal of Plaintiffs' claim of aiding and abetting a RICO violation on the ground that there is no such cause of action."); *Department of Economic Development v. Arthur Andersen & Co.*, 924 F.Supp. 449, 475–78 (S.D.N.Y.1996)(citing the Supreme Court's analysis in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994)).

In *Hayden v. Paul Weiss, Rifkind, Wharton & Garrison*, 955 F.Supp. 248 (S.D.N.Y.1997), the district court followed the reasoning of *Central Bank* and declined to find a private right of action:

> Nowhere in the text of Section 1962 is there any indication that Congress intended to "impose aiding and abetting liability for a violation of the RICO Statute." Indeed, the only reference to aiding and abetting is found in Section 1962(a), which incorporates the general criminal aiding and abetting statute, 18 USC § 2, with specific reference to the collection of an unlawful debt. Plaintiffs have not alleged that price in any way violated § 1962(a). Indeed, the reference to Section 2, in that limited connection, cuts strongly against a conclusion that a Congress intended to create Section 2 liability for other RICO violations.

955 F.Supp. at 256.

The Plaintiffs in this case do not allege any collection of any unlawful debt as a basis for section 1962(a) liability. Therefore, the fact that Congress incorporated the general criminal aiding and abetting

statute into section 1962(a) in the specific context of unlawful debt collection has no application to the facts of this case. As this Court does not recognize a private right of action for aiding and abetting a RICO violation, Plaintiffs' causes of action against the all defendants, insofar as they are based on either "aiding and abetting" or 18 U.S.C. § 2, must be dismissed.

## VII

## PLAINTIFFS' SECTION 1962(d) CLAIMS ARE DISMISSED AS THE SUBSTANTIVE CLAIMS ARE DEFICIENT

█ Plaintiffs' substantive claims under 18 U.S.C.1962(a) and (c) fail to state a cause of action, and have been dismissed. As a result, Plaintiffs' claim under section 1962(d) sounding in conspiracy to violate sections 1962(a) and (c) must also be dismissed. As noted in *Black Radio Network:*

> Section 1962(d) prohibits any conspiracy to commit a RICO violation. A RICO conspiracy claim must fail, however, if the substantive claims themselves are deficient. *Discon Inc. v. NYNEX Corp.*, 93 F.3d 1055 at 1064 (2d Cir.1996); *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir.1990).

44 F.Supp.2d at 581. *See also, Biofeedtrac*, 832 F.Supp. at 592; *Redtail Leasing*, 1999 WL 32941 at *6.

The Plaintiffs' substantive RICO claim (Claim 119) is plainly deficient in this case. Therefore, the purported Section 1962(d) claim (Claim 120) also must fail as a matter of law.

In addition, the Section 1962(d) claim fails as against every defendant because the complaint does not allege that each defendant agreed to commit two or more predicate acts. In *Adler v. Berg Harmon Associates*, 790 F.Supp. 1222 (S.D.N.Y. 1992), the court noted that "18 U.S.C.

---

**1.** It further appears that Plaintiffs seek to hold Old Republic liable on some theory of vicarious liability for the acts of its agent, Artesian

Abstracts. However, as the Federal claims against the Artesian defendants are fatally deficient, the Court need not address this point.

§ 1962(d) requires an allegation that a 'defendant himself at least agreed to commit two or more predicate crimes.'" (quoting *United States v. Ruggiero,* 726 F.2d 913, 921 (2d Cir.), *cert. denied,* 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984)). 790 F.Supp. at 1233. In that case, the complaint alleged that "All of the defendants conspired among themselves to further the scheme to defraud, which was in violation of 18 U.S.C. § 1962(c) as described above. By knowingly and willingly participating in the conspiracy, defendants violated 18 U.S.C. § 1962(d)." *Id.* The court concluded that "Such an allegation falls short of alleging that each defendant personally agreed to commit two or more predicate acts," and that there exited " no factual allegations supporting an inference that the various defendants consciously agreed to become part of a RICO conspiracy." *Id.* at 1234.

Similarly, in *Burke v. Dowling,* the Eastern District Court held:

> In order to state a claim under § 1962(d), Plaintiffs must specifically allege that each of these defendants entered into an agreement to commit two predicate acts. The fact of agreement itself, however, is insufficient to state a claim; Plaintiffs must also allege that defendants embraced the objective of the alleged conspiracy. The defendant must be aware of the existence of the conspiracy, and understand that the RICO enterprise extends beyond his individual role.

944 F.Supp. 1036, 1068 (internal citations and quotations omitted).

The mere parroting of the statutory language in the pleadings is insufficient to show that each defendant knowingly agreed to participate in the alleged scheme:

> [T]he complaints fail to provide specific factual allegations supporting an inference that Fleet entered into an agreement to facilitate the goals of [the] enterprise. "Bare and conclusory allegations are insufficient to withstand

a motion to dismiss and a Plaintiff must plead facts sufficient to show that each defendant knowingly agreed to participate in the conspiracy." *Colony at Holbrook, Inc. v. Strata G.C., Inc.,* 928 F.Supp. 1224, 1238 (E.D.N.Y. 1996).

*Schmidt,* 16 F.Supp.2d at 354.

■ Here, Plaintiffs' Amended Complaint and Civil RICO Statement are devoid of any factual allegation whatsoever to indicate that any of the moving defendants were aware of the alleged scope of the purported enterprise, or that they specifically agreed to further the alleged scheme through the commission or facilitation of any racketeering activity. Therefore, Plaintiffs fail to properly plead the requisite elements of a claim under section 1962(d), and their RICO conspiracy claim (Claim 120) is dismissed.

## VIII

## THIS COURT DECLINES TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE LAW CAUSES OF ACTION

■ Dismissal of pendent state law claims is appropriate where the federal claims under which supplemental jurisdiction is claimed have been dismissed by the Court. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Castellano v. Bd. Of Trustees of Police Officers' Variable Supplements Fund,* 937 F.2d 752, 758 (2d Cir. 1991). *See also Calzaturificio Rangoni S.p.A. v. United States Shoe Corp.,* 868 F.Supp. 1414, 1421 (S.D.N.Y.1994). *Id.* 16 F.Supp.2d at 355.

In the instant case, as set forth above, Plaintiffs' alleged causes of action under RICO, the sole basis for Federal jurisdiction, are dismissed pursuant to Rule 12(b)(6). There is no reason, let alone a compelling reason, for this Court to retain jurisdiction over the Plaintiffs' 118 remaining alleged causes of action, all of which

are based upon state or common law claims.

## CONCLUSION

Plaintiffs in this action did not—and, based on counsel's representations at oral argument, apparently cannot—plead any set of facts that would establish any cognizable RICO claim. For that reason, defendants' motion to dismiss the complaint is granted, with prejudice as to the RICO claims and without prejudice as to Plaintiffs various (and numerous) state law claims.

The third party complaint, which asserts claims for contribution against Chris Gedney and Richard E. Grayson, Esq. is also dismissed without prejudice.